

FILED
CLERK, U.S. DISTRICT COURT

JULY 19, 2012

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ RF _____ DEPUTY

1  THOMAS E. PEREZ
2  Assistant Attorney General
   Civil Rights Division
3
4  ANDRÉ BIROTTE JR.
   United States Attorney
5  LEON W. WEIDMAN
6  Assistant United States Attorney
   Chief, Civil Division
7  ROBYN-MARIE LYON MONTELEONE (State Bar No. 130005)
8  Assistant United States Attorney
9  Assistant Division Chief
   Civil Rights Unit Chief, Civil Division
10 JESSICA O. CHEH (State Bar No. 254012)
11 Assistant United States Attorney
12      Federal Building, Suite 7516
        300 North Los Angeles Street
13      Los Angeles, California 90012
14      Telephone:    (213) 894-2458/0886
        Facsimile:    (213) 894-7819
15      E-mail:       robby.monteleone@usdoj.gov
16                    jessica.cheh@usdoj.gov
17
   Attorneys for Plaintiff United States of America
18
19          UNITED STATES DISTRICT COURT
20      FOR THE CENTRAL DISTRICT OF CALIFORNIA
21 UNITED STATES OF AMERICA,          )   No. CV12-06120 GAF (Ex)
                                       )
22                                     )
                      Plaintiff,       )
23                                     )
                                       )
24              v.                     )
                                       )
25 STARLINE TOURS OF                   )   CONSENT DECREE
   HOLLYWOOD, INC., a business         )
26 entity,                             )
                                       )
27                                     )
                      Defendant.       )
28 _____       )

THE UNITED STATES OF AMERICA ("United States") and STARLINE TOURS OF HOLLYWOOD, INC. ("Starline") hereby agree as follows:

## BACKGROUND

1.     On July 16, 2012, the United States filed this action pursuant to Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 et seq., against Starline.

2.     The matter was initiated by a complaint, received by the United States Department of Justice, Civil Rights Division, Disability Rights Section from Complainant Amy L. Champlin. After Ms. Champlin, who uses a wheelchair, reserved a wheelchair accessible tour for herself and five companions (two of whom used wheelchairs and one who is mobility impaired but did not use a wheelchair) in March 2011, a vehicle without a lift or ramp was sent to pick up Ms. Champlin and her companions.  After being notified that the wrong vehicle had been sent, Starline sent an accessible vehicle to replace the non accessible vehicle.  Unfortunately, the second vehicle failed to start after all of the passengers boarded. Although Starline offered the party a tour on the following day free of charge, Ms. Champlin and her companions were unable to take the tour. Starline gave a full refund to the entire party.

3.     Starline has cooperated fully in the investigation of this matter and has in good faith attempted to review and resolve any issues raised, in an effort to comply with ADA requirements and improve best practices for its customers. Starline does not admit liability or any violation of the ADA or any other law. Rather, this Consent Decree is voluntarily entered into by the parties for the purpose of resolving disputed issues and improving Starline's best practices and customer service.

## TITLE III COVERAGE AND REQUIREMENTS

4.      The Attorney General is responsible for administering and enforcing Title III of the ADA, 42 U.S.C. § 12181 et seq., and the relevant regulations implementing Title III, 29 C.F.R. pt. 36 and 49 C.F.R. pts. 37 and 38.

5.      Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce." 42 U.S.C. § 12184(a).

6.      A fixed route system is "a system of providing transportation of individuals (other than by aircraft) on which a vehicle is operated along a prescribed route according to a fixed schedule." 42 U.S.C. § 12181(4); 49 C.F.R. § 37.3.   A demand responsive system is "any system of providing transportation of individuals by a vehicle, other than a system which is a fixed route system." 42 U.S.C. § 12181(3); 49 C.F.R. § 37.3.

7.      Title III of the ADA provides that if a private entity primarily engaged in the business of transporting people purchases or leases a NEW vehicle (other than an automobile, a van with a seating capacity of less than eight persons, or an over-the-road bus) for its fixed route service after August 25, 1990, it shall ensure that the vehicle is readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. 42 U.S.C. § 12184(b)(3); 49 C.F.R. § 37.103(a) & (b). "NEW," as used throughout this consent decree, means a vehicle "which is offered for sale or lease after manufacture without any prior use." 49 C.F.R. § 37.3; *Toomer v. City Cab*, 443 F.3d 1191, 1995 (10th Cir. 2006).

8.      Title III of the ADA further provides that if a private entity primarily engaged in the business of transporting people purchases or leases a NEW vehicle (other than an automobile, a van with a seating capacity of less than eight persons, or an over-the-road bus) for its demand responsive system after August 25, 1990, it shall ensure that the vehicle is readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, unless the system, when viewed in its entirety, meets the standard for equivalent service as provided by 49 C.F.R. § 37.105. 42 U.S.C. § 12184(b)(3); 49 C.F.R. § 37.103(a) & (c).

9.      Title III of the ADA further provides that if a private entity primarily engaged in the business of transporting people purchases or leases a NEW van with a seating capacity of fewer than eight persons including the driver, for a fixed route or demand responsive service after February 25, 1992, it shall ensure that the van is readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, unless the system, when viewed in its entirety, meets the standard for equivalent service as provided by 49 C.F.R. § 37.105. 42 U.S.C. § 12184(b)(5); 49 C.F.R. § 37.103(d).

10.     The ADA also requires a private entity primarily engaged in the business of transporting people to ensure that its personnel are trained to proficiency, as appropriate to their duties, so that they operate vehicles and equipment safely and properly assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities. 49 C.F.R. § 37.173.

## FINDINGS

11.     Starline is a privately owned and operated company located in Los Angeles, California. Starline provides tours and operates tour buses and

3

charter shuttles to major attractions in Hollywood and the greater Los Angeles area. Starline offers more than thirty different tours and serves approximately one million passengers a year.

12.    In *Ms. Wheelchair California Pageant, Inc. et al. v. Starline Tours of Hollywood, Inc.*, CV 11-2620 JFW (CW), the Court found that, based on its consideration of Starline's fixed route services, Starline is a private entity primarily engaged in the business of transporting people, whose operations affect commerce and which provides specified public transportation services. 42 U.S.C. § 12184; 49 C.F.R. § 37.103.

13.    Starline operates a "fixed route" service within the meaning of 42 U.S.C. §§ 12181(4) and 49 C.F.R. § 37.3. For example, Starline currently offers four "Hop-on, Hop-off" sightseeing routes through four separate but interconnected loops, which pass through Hollywood, Beverly Hills, Santa Monica, Universal City, and downtown Los Angeles. Each of Starline's four "Hop-on, Hop-off" routes has multiple stops at designated pick up/drop off locations at which double decker tour buses and other smaller vehicles stop every twenty to thirty minutes. Many of these designated pick up/drop off locations have designated Starline route marker signs.

14.    Starline also operates a demand-responsive system or systems within the meaning of 42 U.S.C. §§ 12181(3) and 49 C.F.R. 37.3, in that Starline offers tours and transportation services that do not have a fixed route, fixed times, fixed stops, or fixed durations.

15.    Starline currently owns and operates a fleet of approximately ninety vehicles, approximately two-thirds of which are used for Starline's demand responsive tours and charters. Of the vehicles used for Starline's demand responsive tours, approximately ten vehicles are currently accessible to individuals with mobility impairments, including individuals who utilize wheelchairs.

16.     Approximately twenty-four vehicles of Starline's fleet are used for Starline's "Hop-on, Hop-off" tours. Of the vehicles used for Starline's "Hop-on, Hop-off" tours, approximately fifteen vehicles are currently accessible to individuals with mobility impairments, including individuals who utilize wheelchairs.

## ACTIONS TO BE TAKEN BY STARLINE
### VEHICLES

17.     Starline will ensure that, within six months, any "NEW" vehicle (as defined in Paragraph 7 above) purchased or leased for use after August 25, 1990 in its fixed route or demand responsive services will be accessible to individuals who use wheelchairs, unless, as to its demand responsive service, Starline can demonstrate that its system provides a level of service to such individuals equivalent to that provided to individuals without disabilities. 42 U.S.C. §§ 12184(b)(3).  Equivalent service for Starline's demand responsive tours shall include the provision of accessible vehicles upon the same notice requirements as tours utilizing non-accessible vehicles. Equivalent service shall further include the option to purchase tickets for Starline's demand responsive tours and request an accessible vehicle online, upon the same notice requirements as demand responsive tours purchased online utilizing non-accessible vehicles. Starline will implement and advertise a policy providing that while advance reservations of tours are not required, notice of the need for an accessible vehicle at least twenty four hours in advance is strongly recommended so as to guarantee the timely provision of an accessible vehicle.

18.     For the fixed route and demand-responsive tours, Starline will continue to maintain a sufficient number of wheelchair accessible vehicles to provide equivalent service to customers who use wheelchairs. Specifically, Starline

must maintain sufficient operational wheelchair accessible vehicles in such reasonable proximity to tour pick up locations as to provide wheelchair accessible vehicles to satisfy the equivalent service standard. For tours such as Starline's Movie Star's Homes Tour and Starline's TMZ Hollywood Tour which permit patrons to purchase tickets shortly before embarking on the tour, this will require Starline to either exclusively utilize wheelchair accessible vehicles for such tours or to maintain accessible vehicles in such close proximity to the pick-up location(s) as to ensure no reasonable additional delay for an accessible tour. Based on the historical data for wheelchair requests on Starline tours, a sufficient number of wheelchair accessible vehicles can be determined by Starline based on historical demand for wheelchair accessible vehicles in the preceding six months of any given point in time. Starline will review the wheelchair request data in its possession every six months and make appropriate adjustments to the number of wheelchair accessible vehicles as needed, to ensure that anticipated demand for wheelchair spaces can be met.

19. Starline will maintain in operative condition its vehicles' securement devices, lifts, ramps, and other accessibility features. 49 C.F.R. § 37.161. Such vehicles shall be maintained pursuant to the equipment manufacturer's maintenance requirements so as to be kept in operational working order. Isolated or temporary interruptions in service or access due to maintenance or repairs are not prohibited, provided that Starline has fulfilled its obligation to maintain its vehicles in operative condition. 49 C.F.R. § 37.161(c). Furthermore, nothing in this paragraph prevents or prohibits Starline from taking any vehicle out of service for the purpose of repair and maintenance including repair or maintenance of accessibility equipment.

//

//

## POLICIES, PRACTICES, AND PROCEDURES

20.   Within three months of the effective date of this Consent Decree, Starline shall review and revise or adopt any policies necessary with respect to ticket sales to ensure that its tour services (whether demand responsive or fixed route) are in compliance with Title III of the ADA, 42 U.S.C. § 12181 & § 12184, and the relevant regulations implementing Title III, 49 C.F.R. pts. 37 and 38. Such policies shall provide that Starline's demand responsive service either exclusively utilizes vehicles that are readily accessible to and usable by individuals with mobility impairments, including individuals who utilize wheelchairs, or that Starline's demand responsive system provides a level of service to such individuals that is equivalent to that provided to individuals without disabilities. 49 C.F.R. § 37.103. Accordingly, Starline's policies shall include the ability to purchase tickets for accessible tours upon the same notice requirements as other tours which utilize non-accessible vehicles. Such policies shall further include the ability to purchase tickets for Starline's demand responsive tours and request an accessible vehicle online, upon the same notice requirements and utilizing the same methods as demand responsive tours utilizing non-accessible vehicles.

21.   During the effective period of this Consent Decree, Starline will ensure its website indicates its obligation and commitment to provide accessible tours to persons with disabilities, how to reserve an accessible vehicle for its demand responsive tours, and that it does not discriminate on the basis of disability. Moreover, Starline shall remove any language from its website which might be construed as requiring twenty four hours advance notice for passengers with mobility impairments, including individuals who utilize wheelchairs, scooters, or similar assistive devices. However, Starline's website will state that while advance reservations of tours are not required, notice of the need for an accessible

7

vehicle at least twenty four hours in advance is strongly recommended so as to guarantee the timely provision of an accessible vehicle.

22. While this Consent Decree is in effect, Starline shall maintain records of all requests for, and the provision of, wheelchair accessible vehicles, whether such requests be submitted by telephone, in writing, in person, or by any other method. Starline shall further maintain records of any and all complaints regarding Starline's policy regarding the availability of wheelchair accessible vehicles for both its fixed route and demand responsive services.

<u>TRAINING</u>

23. Within three months of the effective date of this Consent Decree, Starline shall provide training to all employees who have not received training within the past year, including but not limited to telephone and electronic reservationists, drivers, and kiosk operators, on their obligation under the ADA to assist and treat individuals with disabilities in a respectful and courteous way, and on the policies, practices, and procedures to be adopted as the result of this Consent Decree, as appropriate to their duties. Drivers shall also be trained on operating accessible features and equipment safely. Starline shall provide this training to all new employees, including but not limited to telephone and electronic reservationists, drivers, and kiosk operators, within thirty days of hiring. Starline may videotape the initial training for use in subsequent trainings. Starline shall ensure that all of its employees are trained to proficiency as appropriate to their duties, so that they operate vehicles and equipment safely and properly assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities. See 49 C.F.R. § 37.173.

24. Starline agrees that all training manuals or written materials dealing with policies and practices related to accessibility substantially revised or

8

newly created after the effective date of this Consent Decree shall be consistent with the provisions of this Consent Decree, and approved in advance by counsel for the United States, which approval will not be unreasonably withheld.

## PENALTY AND DAMAGES

25.     Within one month of the effective date of this Consent Decree, Starline will pay to the United States Treasury a civil penalty in the amount of $5,000.00 as authorized by 42 U.S.C. § 12188(b)(2)(C) and 28 C.F.R. § 36.504(a)(3), as amended, in order to vindicate the public interest. Starline's agreement to pay such penalty does not amount to an admission of liability or any violation of the ADA or any other law.

26.     Within one month of the effective date of this Consent Decree, Starline will pay compensatory damages in the total amount of $15,000.00 to Complainant Amy L. Champlin and her five companions, contingent on the execution of a General Release by each recipient. 42 U.S.C. § 12188(b)(2)(B); 28 C.F.R. § 36.504(a)(2).

## REPORTING

27.     Within three months of the effective date of this Consent Decree, Starline will provide to counsel for the United States copies of its revised written policies, practices, and training manuals.

28.     Starline will report to the United States its progress in implementing this Consent Decree within forty-five days after the effective date of this Consent Decree, on the six month anniversary of this Consent Decree, and every six months thereafter, for the duration of the Consent Decree.

//

//

//

## IMPLEMENTATION

29.     In consideration of this Consent Decree, the United States will refrain from undertaking further action relating to this investigation, except as provided in paragraph 30 below.

30.     The United States may review compliance with this Consent Decree or Title III of the ADA at any time. If the United States believes that this Consent Decree or any portion thereof has been violated, it will raise its concerns with Starline in writing and the parties will attempt to resolve the concerns in good faith. In the case of a perceived breach, the United States will give Starline thirty days from the date it notifies Starline in writing of any breach of this Consent Decree to cure that breach before instituting an enforcement action.  Such notice will be given to Starline by certified mail at the following addresses and to the following individuals on Starline's behalf: (a) Mohammed Ghods, 2100 N. Broadway, Ste. 300, Santa Ana, CA, 92706 (714) 558-8580; and (b) Vahid Sapir, 2130 S. Tubeway Ave., Commerce, CA 90040 (323) 201-0115; and (c) Kamrouz Farhadi, 6801 Hollywood Blvd., Ste. 221, Hollywood, CA 90028.

31.     Failure by the United States to enforce this entire Consent Decree or any of its provisions shall not be construed as a waiver of its right to do so with regard to other provisions of this Consent Decree.

32.     This Consent Decree shall be binding on Starline, including all principals, agents, executors, administrators, employees, successors in interest, beneficiaries, and assigns thereof.  In the event that Starline seeks to sell, transfer, or assign all or part of its interest during the term of this Consent Decree, as a condition of sale, transfer, or assignment, Starline shall obtain the written accession of the successor or assignee to any obligation remaining under this Consent Decree for the remaining term of the Consent Decree.  Nothing in this Consent Decree prevents or prohibits Starline from disposing of its vehicles or

equipment in the ordinary course of business, nor is it intended to interfere with Starline in the operation of its business. Moreover, nothing in this Consent Decree precludes Starline from making operational decisions concerning its fleet of vehicles, provided that Starline complies with its obligations under this Consent Decree.

33.   A signatory to this Consent Decree in a representative capacity for either party represents that he or she is authorized to bind that party to this Consent Decree.

34.   This Consent Decree constitutes the entire agreement between the United States and Starline on the matters raised herein and no other statement, promise, or agreement, either written or oral, made by any party or agents of any party, that is not contained in this written Consent Decree, shall be enforceable.

35.   This Consent Decree is not intended to remedy any other potential violations of the ADA or any other law that is not specifically addressed in this Consent Decree. Nothing in this Consent Decree changes Starline's obligation to otherwise comply with the requirements of the ADA.

## EFFECTIVE DATE AND TERMINATION DATE

36.   The effective date of this Consent Decree is the date of the last signature below.

//

//

//

37.   The duration of this Consent Decree will be three years from the effective date.

AGREED AND CONSENTED TO:

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division


_____
ROBYN-MARIE LYON MONTELEONE
Assistant United States Attorney
Assistant Division Chief
Civil Rights Unit Chief, Civil Division

JESSICA O. CHEH
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

Dated: July 10th 2012

STARLINE TOURS OF HOLLYWOOD, INC.

_____
KAMROUZ FARHADI

Chairman
Starline Tours of Hollywood, Inc.

Dated:

12

APPROVED AS TO FORM AND CONTENT:

GHODS LAW FIRM

MOHAMMED K. GHODS

Attorneys for Defendant
Starline Tours of Hollywood, Inc.

Dated:   7/12/2012

13